761 F.2d 484
 1985-1 Trade Cases 66,604
 RAZORBACK READY MIX CONCRETE COMPANY, INC., Appellee,
v.
Charles T. WEAVER, Individually and in his capacity as
President of L & S Concrete Company, L & S Concrete Company;
Webco, Inc., Julian Gilliam, Individually and in his
capacity as President of Gilliam Brothers, Inc.; Gilliam
Brothers, Inc., Appellants,
Ellen Case, Individually and in her capacity as President of
Case Concrete Company and Case Concrete Company.
RAZORBACK READY MIX CONCRETE COMPANY, INC., Appellee,
v.
Charles T. WEAVER, Individually and in his capacity as
President of L & S Concrete Co.; Webco, Inc., Appellants,
Julian Gilliam, Individually and in his capacity as
President of Gilliam Brothers, Inc.; Gilliam Brothers,
Inc.; Ellen Case, Individually and in her capacity as
President of Case Concrete Co.; Case Concrete Company, Appellants.
 Nos. 84-1324, 84-1325.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1984.
Decided May 8, 1985.
 
 Steven Napper, Little Rock, Ark., for appellants.
 Samuel A. Perroni, Little Rock, Ark., for appellee.
 Before BRIGHT, McMILLIAN and BOWMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 The defendants in this action have taken an interlocutory appeal under 28 U.S.C. Sec. 1292(b) from an order of the District Court denying their motions to dismiss or for summary judgment. The complaint alleges a conspiracy in violation of the Sherman Act, 15 U.S.C. Sec. 1, et seq., and also sets forth a pendent common law claim alleging a conspiracy to interfere with plaintiff's contractual rights and business expectancies.
 
 
 2
 In their motions to dismiss or for summary judgment, defendants argued that their acts were protected under the Noerr-Pennington doctrine, that plaintiff failed to allege injury to competition and therefore has not stated a cause of action under the Sherman Act, and that plaintiff's interstate commerce allegations are insufficient to confer subject matter jurisdiction. This Court, agreeing with the District Court that an interlocutory appeal might advance materially the ultimate determination of this litigation, certified all the foregoing issues for review. We now conclude that defendants' motions to dismiss or for summary judgment should have been granted, since defendants are correct that their acts are protected under the Noerr-Pennington doctrine and also that the complaint does not allege an injury to competition. In view of our holding with respect to those two issues, we do not address the question of whether the "affecting commerce" jurisdictional test has been satisfied.
 
 I.
 
 3
 In February 1982, plaintiff Razorback Ready Mix Concrete Co., Inc. (Razorback), entered into a contract for the sale of its entire business to Razorback Quality Concrete Company. The sale was made contingent upon the issuance of certain tax-exempt industrial development revenue bonds by Pulaski County, Arkansas. The bond issue in question was scheduled to be sold to the general public on or about May 12, 1982. Most of the proceeds from the bond issue were to be used to pay off Razorback's corporate debt, with the remainder of the proceeds to be used for expansion of the business and for the purchase of new equipment to be used in connection therewith.
 
 
 4
 Defendants are competitors of Razorback in the ready-mix concrete business. They made their opposition to this bond issue known to the local official who was about to approve it, the county judge, who nevertheless entered an order on April 20, 1982 authorizing the issuance of the bonds. Defendants thereupon filed suit challenging the judge's authority to issue the bonds. They also filed an appeal of his order to the Circuit Court for Pulaski County. Defendants were joined in their suit by six members of the Pulaski County Quorum Court, which is the legislative body for Pulaski County. The suit alleged that the proposed bond issue violated several provisions of the Arkansas Constitution. It also alleged that the bond issue was not proposed in good faith for a proper purpose, and that the county judge had acted unreasonably and oppressively in authorizing the bond issue to go forward.
 
 
 5
 As a result of defendants' actions, the bonds were never issued and Razorback, unable to meet its financial obligations, went into bankruptcy in June 1982. The business thereafter was sold in bankruptcy to a third party and remains in operation to the present as a vendor of ready-mix concrete.
 
 II.
 
 6
 Defendants contend that the legal action they took to block the bond issue was privileged under the Noerr-Pennington doctrine. We agree.
 
 
 7
 The import of the Noerr-Pennington doctrine, which was formulated in the cases of Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), is to immunize from antitrust scrutiny attempts to induce the passage or enforcement of law or to solicit governmental action even though the result of such activities is to cause injury to others. This immunity derives from basic First Amendment principles and extends not only to attempts to influence legislative and executive functions but also to "the use of administrative or judicial processes." Otter Tail Power Co. v. United States, 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359 (1973).
 
 
 8
 Noerr left open the possibility that the political process may be so abused that efforts to influence the government are mere "shams" intended to cover anti-competitive activity. See 365 U.S. at 140, 81 S.Ct. at 531. The "sham exception" was later confirmed in California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 511-16, 92 S.Ct. 609, 612-15, 30 L.Ed.2d 642 (1972). Based on California Motor, the "sham exception" is a narrow one and applies only where the activity in question was not to influence government, but simply "to deter competitors from making applications that would set the public decision-making apparatus into motion. Such a scheme, if proven, would be embraced by the sham exception since ... it involved 'nothing more than' a direct restraint on competitors." Handler, M., Twenty-Five Years of Antitrust (Twenty-Fifth Annual Antitrust Review), 73 Colum.L.Rev. 415, 436-37 (1973) (quoting Noerr, 365 U.S. at 144, 81 S.Ct. at 533). Subsequent decisions confirm that the "sham exception" is applicable when the activity in question corrupts governmental processes to such an extent that it constitutes access-barring conduct of the sort described in California Motor. See Woods Exploration & Producing Company v. Aluminum Company of America, 438 F.2d 1286, 1296-98 (5th Cir.1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); see also Israel v. Baxter Laboratories, 466 F.2d 272, 278-79 (D.C.Cir.1972).
 
 
 9
 Chest Hill Co. v. Guttman, 1981-2 Trade Cas. (CCH) p 64,417 (S.D.Ohio May 29, 1981), contains what we find to be a clear and accurate exposition of the law in this area.
 
 
 10
 Furthermore, it is clear that a defendant's invocation of adjudicative process to press legitimate claims is protected even though its purpose in doing so is to eliminate competition. Noerr, supra, 365 U.S. at 140 [81 S.Ct. at 531]; Pennington, supra, 381 U.S. at 669 [85 S.Ct. at 1592]. The constitutional right of petition, of which the right of access to the courts is but a part, would be seriously undermined if mere improper purpose in bringing a suit--such as a desire to eliminate or injure a competitor by requiring it to defend an otherwise meritorious action--gave rise to antitrust liability. Id. It is only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process, that the Noerr-Pennington cloak of immunity provides no protection.
 
 
 11
 Id. at p. 75,054.
 
 
 12
 Razorback argues that it has alleged that the litigation undertaken by defendants was a "sham," that whether the "sham exception" applies is purely a question of fact, that the facts are not yet sufficiently developed to permit resolution of the issue, and that the District Court therefore was correct in denying the motions to dismiss or for summary judgment on this ground. We hold, however, that as a matter of law the "sham exception" to the Noerr-Pennington doctrine is inapplicable to the case before us.
 
 
 13
 Our review of the cases convinces us that the key to the "sham exception" is an improper interference with governmental processes. We think it is clear that the institution of a single lawsuit and a related appeal, which is the conduct that defendants herein are charged with, does not give rise to a cause of action under the antitrust laws absent allegations that the lawsuit involves serious misconduct similar to the access-barring abuses described in California Motor. Cf. Hydro-Tech Corporation v. Sundstrand Corporation, 673 F.2d 1171, 1177 (10th Cir.1982).
 
 
 14
 As this Court recognized in First American Title Company of South Dakota v. South Dakota Land Title Association, 714 F.2d 1439 (8th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), " '[t]he right of access to the courts is indeed but one aspect of the right of petition'; accordingly, groups do not violate the Sherman Act by 'us[ing] the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitiors.' " Id. at 1447 (quoting California Motor Transport, 404 U.S. at 510-11, 92 S.Ct. at 611-12).
 
 
 15
 Here Razorback sought a substantial boon from local government--the issuance of industrial revenue bonds for its benefit. It should not have been surprised that its competitors would resort to the use of the courts to prevent it from gaining what they undoubtedly regarded as an unfair competitive advantage in the form of low-cost financing at the expense of the public fisc. Defendants' motive may have been selfish or altruistic or mixed; that is immaterial. Regardless of motive, defendants' actions are clearly within the ambit of First Amendment protection and of Noerr-Pennington immunity from the antitrust laws.
 
 III.
 
 16
 Alternatively, Razorback's amended complaint must be dismissed for failure to state a cause of action under the Sherman Act. Razorback alleges that defendants filed a "sham" lawsuit and appeal to challenge the bond issue, knowing that "the natural and probable consequence of their action would be to cause [Razorback] financial injury, loss of business and/or to force [Razorback] out of business, thereby eliminating a competitor and further expanding their potential markets." Amended Complaint p 16, Designated Record (D.R.) at 133. Razorback further alleges that as a direct and proximate result of defendants' "sham" litigation, Razorback suffered injury to the extent of at least $700,000. See id. p 17, D.R. at 133. The question presented is whether Razorback has alleged an injury to competition as distinguished from injury to itself. We believe that it has not.
 
 
 17
 The antitrust laws exist for " 'the protection of competition, not competitors.' " See Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) ). Thus, as this Court recently has noted,
 
 
 18
 to maintain a private antitrust action, a party must do more than claim improper motive and some causal connection between its injury and the defendants' activity.... Rather, the party must demonstrate that it has suffered the type of injury Congress has intended 'to redress in providing a private remedy for violations of the antitrust laws.'
 
 
 19
 Henke Enterprises v. Hy-Vee Food Stores, 749 F.2d 488, 489 (8th Cir.1984) (citation omitted) (quoting Blue Shield of Virginia v. McCready, 457 U.S. 465, 483, 102 S.Ct. 2540, 2550, 73 L.Ed.2d 149 (1982) ).
 
 
 20
 The injury complained of by Razorback is that it was deprived of the benefits that would have accrued to it from the county's issuance of industrial revenue bonds. This deprivation occurred because of the actions taken by defendants to block the bond issue. Giving a liberal construction to the amended complaint, it alleges a conspiracy to stop the bond issue and thereby to harm or eliminate Razorback as a competitor. Even as thus construed, the amended complaint does not, we believe, allege a per se violation of Sec. 1 of the Sherman Act, and thus Razorback is not relieved from the requirement of pleading and proving injury to competition. See Stifel, Nicolaus & Company v. Dain, Kalman & Quail, Inc., 578 F.2d 1256 (8th Cir.1978).
 
 
 21
 The amended complaint does not include an allegation of the relevant market or of any actual anticompetitive effects within the relevant market. Razorback does not even allege that it has been eliminated as a competitor; to the contrary, it appears to be conceded that Razorback's ready-mix concrete business (although under different ownership) remains a going concern. Accordingly, because Razorback failed to allege in its amended complaint that defendants' conduct had any adverse effect on competition, defendants are entitled to dismissal of Razorback's amended complaint for failure to state a cognizable claim under Sec. 1 of the Sherman Act.
 
 IV.
 
 22
 Defendants' actions are immune from antitrust challenge by reason of the Noerr-Pennington doctrine. Alternatively, the amended complaint fails to state a claim under the antitrust laws. Accordingly, the order of the District Court is vacated with directions that defendants' motions to dismiss or for summary judgment with respect to Razorback's Sherman Act claim be granted.[1]
 
 
 
 [1]
 We note that diversity of citizenship among the parties to this case does not exist. Therefore, with respect to Razorback's pendent common law claim, which is not before this Court, the District Court must exercise its discretion in a determination of whether or not jurisdiction over that claim should be retained. See Curtis v. Sears, Roebuck & Company, 754 F.2d 781, 784-87 (8th Cir.1985); see also Koke v. Stifel, Nicolaus & Co., 620 F.2d 1340, 1345-47 (8th Cir.1980)