817 F.2d 455
 55 USLW 2638, 1987-1 Trade Cases 67,544,
RICO Bus.Disp.Guide 6612
 George HUFSMITH, Razorback Ready Mix Concrete Co., Inc., Appellant,
v.
Charles T. WEAVER, Individually and in his capacity as
President of L & S Concrete Co.; Webco, Inc.; Julian
Gilliam, Individually and in his capacity as President of
Gilliam Brothers, Inc.; Gilliam Brothers, Inc.; Ellen
Case, Individually and in her capacity as President of Case
Concrete Co.; Case Concrete Company; Larry Rogers,
Individually and as a member of the Pulaski Co. Quorum
Court; W.W. Whipple, Individually and in his capacity as a
member of the Pulaski Co. Quorum Court; Willandre Dean,
Individually and as a member of the Pulaski Co. Quorum
Court, Appellees.
George HUFSMITH, Razorback Ready Mix Concrete Co., Inc., Appellee,
v.
Charles T. WEAVER, Individually and in his capacity as
President of L & S Concrete Co.; Webco, Inc.; Julian
Gilliam, Individually and in his capacity as President of
Gilliam Brothers, Inc.; Gilliam Brothers, Inc., Appellants.
Ellen Case, Individually and in her capacity as President of
Case Concrete Co.; Case Concrete Company; Larry Rogers,
Individually and in his capacity as a member of the Pulaski
Co. Quorum Court; Willandre Dean, Individually and as a
member of the Pulaski Co. Quorum Court.
 Nos. 86-1960, 86-1978.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 12, 1987.
Decided April 29, 1987.
 
 Samuel A. Perroni, Little Rock, Ark., for appellant.
 Steven Napper, Little Rock, Ark., for appellee.
 Before ROSS, BOWMAN, and MAGILL, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 This is the second trip that Razorback Ready Mix Concrete Company, Inc. ("Razorback") and defendants-appellees, competitors of Razorback, have made to this court. In Razorback Ready Mix Concrete Co. v. Weaver, 761 F.2d 484 (8th Cir.1985) ("Razorback I "), we held as a matter of law, as to Razorback's Sherman Act claim, that the "sham exception" to the Noerr-Pennington doctrine was inapplicable to the defendants' lawsuits opposing the issuance of certain tax-exempt industrial revenue bonds which would have benefited Razorback. Id. at 487.[1] This court thus vacated the district court order denying defendants' motions for summary judgment and dismissal, and directed the district court to grant the motions with respect to the Sherman Act claim. Id. at 488-89. As a result of these rulings, we noted that diversity of citizenship among the parties did not exist, and thus observed that the district court would have to exercise its discretion in determining whether or not to retain jurisdiction of Razorback's pendent tortious interference with contract claim, which was not before us. Id. at 489 n. 1 (citations omitted).
 
 
 2
 After Razorback I was decided, Razorback filed with the district court a motion for leave to amend its complaint to include a RICO action under 18 U.S.C. Sec. 1962 and an abuse of process claim, and a motion to retain jurisdiction of the tortious interference claim. The defendants responded by agreeing with Razorback that the district court should retain jurisdiction, but only for the purpose of granting their motions for summary judgment on Razorback's tort claim. The defendants first argued that dismissal was appropriate because in Razorback I, we ruled that their actions were immune from antitrust liability under the Noerr-Pennington doctrine, and because cases from this circuit, such as First National Bank of Omaha v. Marquette National Bank of Minneapolis, 482 F.Supp. 514 (D.Minn.1979), aff'd per curiam, 636 F.2d 195 (8th Cir.1980), cert. denied, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981), have held that the doctrine is applicable to tort claims. Alternatively, the defendants argued that the claim could be dismissed on res judicata grounds, because in an earlier Arkansas state court case involving the same tortious interference claim, the Pulaski County Circuit Court held that the defendants' actions were protected by the Noerr-Pennington doctrine.[2] The defendants further argued that res judicata barred Razorback's proposed RICO and abuse of process claims because they arose out of the same operative facts as the Sherman Act and tortious interference claims. Additionally, the Gilliam defendants moved for attorney's fees under Fed.R.Civ.P. 11, asserting that existing law was clear in this area at the time Razorback filed its aforementioned motions, and that the motions were filed merely for purposes of harassment.
 
 
 3
 The district court[3] granted Razorback's motion to retain jurisdiction, but relying on Razorback I and In re IBP Confidential Business Documents Litigation, 755 F.2d 1300 (8th Cir.1985), held as a matter of law that the doctrine of res judicata barred further litigation of the pending tortious interference claim, and of the proposed RICO and abuse of process claims.[4] Accordingly, the court granted the defendants' motions with respect to Razorback's Sherman Act claim as mandated by Razorback I, granted their motions for summary judgment on the tortious interference claim, and denied Razorback's motion to amend its complaint to assert RICO and abuse of process claims. The court also denied the Gilliam defendants' motion for attorney's fees on the basis that the IBP opinion, which the court felt "clarified the scope of the Noerr-Pennington doctrine," was not filed until after Razorback moved to amend its complaint and to ask the court to retain jurisdiction.
 
 
 4
 Razorback appeals on the sole ground that the district court erred in granting the defendants' motions for summary judgment on the tortious interference claim.[5] The Gilliam defendants cross-appeal, renewing their claim for attorney's fees.
 
 
 5
 I. DISCUSSION.
 
 
 6
 Razorback does not claim that the Noerr-Pennington doctrine is inapplicable to its tortious interference with contract claim. Rather, Razorback asserts that the district court should not have extended the doctrine as a matter of law to the claim because Razorback has never had an opportunity to present the facts of its claim to a jury.
 
 
 7
 In IBP, this court carefully examined the history and import of the Noerr-Pennington doctrine, see IBP, 755 F.2d at 1311-13, which emanated from the Supreme Court's decision in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), a case involving antitrust claims, which the Supreme Court later explained as based on the first amendment's guarantee of the right to petition the government. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); IBP, 755 F.2d at 1311.
 
 
 8
 Although the Supreme Court has never decided whether the Noerr-Pennington doctrine is applicable outside the antitrust area, Central Telecommunications, Inc. v. TCI Cablevision, Inc., 800 F.2d 711, 717-18 n. 7 (8th Cir.1986), this court has long indicated that the doctrine may be so extended. See First National Bank of Omaha, 482 F.Supp. at 521, 524-25 (Noerr-Pennington doctrine held applicable to plaintiff's 42 U.S.C. Sec. 1983 and tortious interference with business claims), aff'd per curiam, 636 F.2d 195 (8th Cir.1980), cert. denied, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 614-15 (8th Cir.1980) (Noerr-Pennington doctrine held applicable to plaintiff's action under 42 U.S.C. Sec. 1983); Missouri v. National Organization for Women, Inc., 620 F.2d 1301, 1318-19 (8th Cir.) (Noerr-Pennington doctrine held applicable to plaintiff's tortious infliction of economic harm claim), cert. denied, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 49 (1980).
 
 
 9
 In IBP, however, this court clarified the scope of the doctrine's application to non-antitrust claims. We explicitly recognized that it may be extended to a defendant's actions to influence the government which have given rise to claims of tortious interference with business, and to alleged conspiracies under 42 U.S.C. Sec. 1983. IBP, 755 F.2d at 1312-13 (citations omitted). Our most recent decision involving this specific issue approved IBP's scope analysis, at least with respect to the tortious interference with business expectancy claim involved in that case. Central Telecommunications, 800 F.2d at 717-18 n. 7. Accordingly, Razorback concedes, as it must, that the Noerr-Pennington doctrine may be applied to its tortious interference with contract claim.
 
 
 10
 Razorback argues, however, that many of the above-cited cases are distinguishable from the present case because they were decided only after the district court or this court fully reviewed the facts. Razorback notes it has never been given this opportunity since its claims have always been decided by way of summary judgment. Additionally, although recognizing Razorback I held that the defendants' actions did not fall within the "sham" exception to the Noerr-Pennington doctrine, Razorback claims that their actions may fall within the "other" exception to the doctrine outlined in IBP, i.e., activities "which do not qualify for protection even if undertaken in a genuine attempt to influence governmental policy." IBP, 755 F.2d at 1313. Razorback thus argues that there are general issues of material fact which should have precluded the district court from granting defendants' motions for summary judgment on the tortious interference claim. We disagree.
 
 
 11
 In the Sherman Act count of its amended complaint, Razorback alleged, among other things, that the defendants filed a "false and fraudulent" lawsuit and appeal to prevent issuance of the revenue bonds. In Razorback I, however, this court held:
 
 
 12
 Our review of the cases convinces us that the key to the "sham exception" is an improper interference with governmental processes. We think it is clear that the institution of a single lawsuit and a related appeal, which is the conduct that defendants herein are charged with, does not give rise to a cause of action under the antitrust laws absent allegations that the lawsuit involves serious misconduct similar to the access-barring abuse described in California Motor [Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) ]. Cf. Hydro-Tech Corporation v. Sundstrand Corporation, 673 F.2d 1171, 1177 (10th Cir.1982).
 
 
 13
 Razorback I, 761 F.2d at 487 (emphasis added).
 
 
 14
 In so stating, we previously quoted with approval from Chest Hill Co. v. Guttman, 1981-2 Trade Cas. (CCH) p 64,417 (S.D.Ohio May 29, 1981):
 
 
 15
 It is only where a defendant's resort to the court is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process, that the Noerr-Pennington cloak of immunity provides no protection.
 
 
 16
 Razorback I, 761 F.2d at 487 (quoting Chest Hill at p. 75,054) (emphasis added).
 
 
 17
 It is implicit from these two paragraphs and the entire Razorback I opinion that this court reviewed Razorback's allegations, affidavits, and the like, and concluded that the defendants' allegedly wrongful actions did not involve "improper interference with governmental processes;" "serious misconduct" of the kind described in California Motor, i.e., activities effectively barring meaningful access to the courts, see California Motor, 404 U.S. at 512-13, 92 S.Ct. at 612-13; or "illegal or reprehensible" acts of the kind described in Chest Hill, so as to deprive the defendants of the Noerr-Pennington defense. Put another way, it is apparent that this court implicitly determined that the record presented "no genuine issue of material fact, and that [defendants were] entitled to [summary] judgment as a matter of law." Fed.R.Civ.P. 56(c). Moreover, although the Razorback I court did not discuss the "other" exception to the Noerr-Pennington doctrine, it is apparent from the court's opinion that the defendants' actions would not fall within that category.[6]
 
 
 18
 Further, as the district court recognized, the activities that we held in Razorback I to be protected by the Noerr-Pennington doctrine are the exact same activities Razorback alleged in its amended complaint as the basis of its tortious interference with contract claim. Accordingly, taking into account the basic premise that the Noerr-Pennington doctrine is applicable to tortious interference claims, it is only logical that: because the allegations which formed the basis of Razorback's Sherman Act claim are the same as those of its tortious interference claim, and because the Razorback I court held as a matter of law that the Noerr-Pennington doctrine applied to those actions in the context of the Sherman Act claim, then the Noerr-Pennington doctrine must apply as a matter of law to defendants' actions with respect to Razorback's tortious interference claim.[7]
 
 
 19
 Moreover, although Razorback claims that the district court improperly based its res judicata holding on the Pulaski County Circuit Court decision, of which Razorback was not a party, we find this claim groundless. A careful reading of the district court's opinion shows that the court did not base its holding on the Arkansas state court decision, but on the Razorback I and IBP decisions. In this the court did not err.
 
 
 20
 Federal law governs the issue of res judicata in this case. See Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir.1982). In Poe we summed up the requirements of the doctrine:
 
 
 21
 Final judgment on the merits precludes the relitgation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 [101 S.Ct. 2424, 2427, 69 L.Ed.2d 103] (1981); Cromwell v. County of Sac, 94 [ (4 Otto) ] U.S. 351, 353 [24 L.Ed. 195] (1877). Having failed to recover on one theory of recovery, a litigant cannot attempt to relitigate the same claim under a different theory of recovery. United States v. Stuart, 689 F.2d 759, 761 (8th Cir.1982); Roach v. Teamsters Local Union No. 688, [595 F.2d 446, 450 (8th Cir.1979) ]; Robbins v. District Court of Worth County, Iowa, 592 F.2d 1015, 1018 (8th Cir.), cert. denied, 444 U.S. 852 [100 S.Ct. 107, 62 L.Ed.2d 69] (1979). [Footnote omitted].
 
 
 22
 Id. at 1105. Although it is often difficult to determine whether two claims are the same for purposes of res judicata, in Ruple v. City of Vermillion, 714 F.2d 860 (8th Cir.1983), cert. denied, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984), we noted "in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." Id. at 861.
 
 
 23
 In this case, it is clear, as the district court found, that the tortious interference claim arose out of the same nucleus of operative facts as the Sherman Act claim, i.e., the defendants' filing of lawsuits to prevent the bond issue. Moreover, that Razorback's Sherman Act claim was decided by way of summary judgment in Razorback I does not preclude that judgment from having res judicata effect as to the tort claim. See id. at 862 (judgment entered on motion to dismiss or motion for summary judgment is final for purposes of res judicata ). Accordingly, because the Noerr-Pennington doctrine is applicable to Razorback's tortious interference claim, which arose out of the same nucleus of operative facts as its Sherman Act claim, and because our ruling in Razorback I served as a final judgment on the merits of the Sherman Act claim, the district court correctly held that Razorback's tort claim was barred by the doctrine of res judicata.
 
 
 24
 Finally, we perceive no abuse of discretion by the district court in denying the Gilliam defendants attorney's fees. We agree with the court that the IBP decision substantially clarified this circuit's view on the scope of the Noerr-Pennington doctrine's applicability to non-antitrust claims. We therefore also agree that Razorback's motions to amend its complaint and to ask the court to retain jurisdiction, which were filed before we issued the IBP decision, were not used as a means to harass the defendants.
 
 
 25
 II. CONCLUSION.
 
 
 26
 Based on the foregoing analysis, we hold that the district court did not err in granting the defendants' motions for summary judgment on Razorback's tortious interference with contract claim, and further hold that the court's denial of attorney's fees to the Gilliam defendants was not an abuse of discretion. Accordingly, we affirm.
 
 
 
 [1]
 Alternatively, because Razorback failed to allege in its amended complaint that defendants' conduct had any adverse impact on competition, we held that the complaint must be dismissed for failure to state a cause of action under the Sherman Act. Razorback I, 761 F.2d at 488
 
 
 [2]
 The state court decision is titled Hufsmith v. Weaver, No. 84-1189 (Pulaski County Circuit Court July 19, 1984), aff'd, 285 Ark. 357, 687 S.W.2d 130 (1985). George Hufsmith, the president and majority stockholder of Razorback, originally brought the intentional interference with contract action against the defendants herein in Pulaski County Circuit Court. The allegations upon which his claim was based were the same allegations before this court in Razorback I, i.e., that the defendants filed a "false and fraudulent" lawsuit and appeal to block the issuance of the industrial revenue bonds. The court granted defendants' motions for summary judgment and dismissed the case on alternative grounds: first, it held that under Arkansas law, Hufsmith lacked standing to pursue the tortious interference with contract claim; and second, it held that defendants' actions were protected by the Noerr-Pennington defense. On appeal, the Arkansas Supreme Court affirmed based on its finding that Hufsmith lacked standing. Having so found, the court determined that it did not need to reach the Noerr-Pennington issue
 At the same time that the parties were in state court, Hufsmith and Razorback apparently filed Sherman Act and tortious interference claims against the same defendants in federal court. Subsequently, Hufsmith voluntarily dismissed himself from the case because of the district court's concerns of standing. This case eventually resulted in the appeal heard by us in Razorback I.
 
 
 [3]
 The Honorable George Howard, United States District Judge for the Eastern District of Arkansas
 
 
 [4]
 The district court stated:
 [T]his Court must conclude that res judicata bars further litigation of the pending claim of tortious interference and the proposed RICO Act and abuse of process claims. The allegations found in Paragraph 11 of the proposed second amended complaint which form the basis of these claims allege "a scheme to file a false and fraudulent lawsuit ... in an attempt to block the issuance of certain Arkansas industrial revenue bonds ... and a scheme to file a false fraudulent appeal of the ... order ... authorizing the issuance of said" bonds. In Razorback, the Eighth Circuit has already found those very activities to be within the protection of the Noerr-Pennington doctrine. Under IBP, the protection afforded by Noerr-Pennington extends to these activities even when liability is sought in another theory of law besides antitrust. Since the Eighth Circuit has ruled as a matter of law that these alleged activities are protected, all possible claims based on these same facts are barred.
 District Court Opinion at 5 (E.D.Ark. June 30, 1986) (emphasis supplied by district court).
 
 
 [5]
 Razorback does not challenge the district court's denial of its motion to amend its complaint to assert the RICO and abuse of process claims
 
 
 [6]
 In IBP, this court cited examples of activity that would fall within this category: violence, illegal acts, and defamation. IBP, 755 F.2d at 1313. In this case, the only relevant activity would be any illegal acts that the defendants allegedly committed, e.g., the filing of "false and fraudulent" suits and pleadings. From the Razorback I court's discussion of Chest Hill and from the entirety of its decision, however, it is implicit, if not apparent, that the court considered Razorback's allegations of "fraud" and found that even if the allegations were true, they did not rise to the level necessary for taking away the Noerr-Pennington defense from the defendants
 
 
 [7]
 Razorback asserts specifically that the depositions of certain persons, who stated they did not know of defendants' lawsuits and yet were named as parties, raised genuine issues of material fact concerning its "false and fraudulent" lawsuit claims so as to preclude summary judgment under Fed.R.Civ.P. 56(c)
 Admittedly, these depositions may raise an issue of fact. However, "[b]y its very terms, [Rule 56(c) ] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., --- U.S. ----, 106 S.Ct. 2505, 2506, 2510, 91 L.Ed.2d 202 (1986) (emphasis by Supreme Court). In Liberty Lobby, the Supreme Court defined "material" facts as those "that might affect the outcome of the suit under the governing law," and explained that "while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. The Court also noted that the material fact must be "genuine," i.e., "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The Court thus stated that if the evidence is merely colorable or is not significantly probative, summary judgment is appropriate. Id. 106 S.Ct. at 2511 (citations omitted); see Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 As already noted, the depositions and allegations which Razorback claims raise general issues of material fact are the exact same ones that supported its Sherman Act claim, the claim before this court in Razorback I. Although we did not expressly refer to Rule 56(c) in that case, we believe a close reading of our opinion shows that we found Razorback failed the materiality requirement of the rule. By carefully examining the substantive law governing the Noerr-Pennington doctrine in light of defendants' actions, we held that those actions were covered by the doctrine as a matter of law. See Razorback I, 771 F.2d at 487. Thus, this court implicitly held that Razorback's allegations concerning defendants' conduct, even if true, were not critical to its decision in light of the governing substantive law.
 This analysis applies with full force to the instant case since the Noerr-Pennington doctrine has been determined to apply to claims of tortious interference with contract. Thus, although Razorback's supporting documents may raise an issue of fact, because the substantive law governing the Noerr-Pennington doctrine makes these facts irrelevant, and thus immaterial, summary judgment is appropriate as a matter of law.