**GENE COPE & ASSOCIATES, INC., d/b/a Vintage Wine Selections and Direct Imports, Ltd., Plaintiff,**

**v.**

**AURA PROMOTIONS, LTD., a Delaware Corporation, as successor in interest to Pieroth Brothers, Inc., an Illinois Corporation, Defendant.**

Civ. A. No. 85–5053.

United States District Court, E.D. Michigan, S.D.

April 28, 1988.

Kurt A. O'Keefe, Detroit, Mich., for plaintiff.

Kenneth M. Zorn, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

SUHRHEINRICH, District Judge.

This matter is before the Court on the objections of plaintiff Gene Cope & Associates, d/b/a Vintage Wine Selections and Direct Imports, Ltd. (Vintage), to Magistrate Virginia M. Morgan's Report and Recommendation of April 27, 1987.[1] In her report, the magistrate recommended that this Court dismiss the plaintiff's lawsuit. Specifically, the magistrate concluded that the *Noerr–Pennington* doctrine immunized defendant Aura Promotions, Ltd. (Aura) from liability in this antitrust case, thus mandating dismissal of plaintiff's case.

The plaintiff has filed timely objections to the magistrate's report and recommendation. Plaintiff contends that the *Noerr–Pennington* doctrine was erroneously applied to its lawsuit. The plaintiff further contends that the magistrate erroneously concluded that a stay of this suit pending the outcome of the concurrent Wayne County Circuit Court lawsuit was appropri-

---

**1.** Direct Imports and Vintage Wine Selections are related companies, both being owned by Guido Capaldi. Direct Imports is engaged in the retail sale and distribution of wine and wine related products, while Vintage is engaged in the promotion of wine and wine related products via wine samplings.

ate. Finally, plaintiff alleges that dismissal of this lawsuit is improper, given the present posture of the case. As these objections effectively cover all the grounds discussed in the report and recommendation, the Court shall make a *de novo* determination of all portions of the report and recommendation. *See* 28 U.S.C. § 636(b)(1). As an aid in making its determination, the Court heard the arguments of counsel on March 22, 1988.

### Standards for Dismissal Under Fed.R.Civ.P. 12(b)(6)

■■■ This matter originally came before the magistrate on defendant Aura's motion to dismiss. When deciding a motion to dismiss, the material facts pleaded in the complaint must be taken as true. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed. 2d 338 (1976). When dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is sought, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 746, 96 S.Ct. at 1853; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, dismissals in antitrust cases should be granted very sparingly prior to full discovery since "the proof is largely in the hands of the alleged conspirators." *Hospital Bldg. Co., supra, quoting Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The Supreme Court has described the standard for dismissal in antitrust cases as "concededly rigorous." *Hospital Bldg. Co., supra* 425 U.S. at 746–47, 96 S.Ct. at 1853. These standards shall be utilized in making this Court's *de novo* determination of Aura's motion to dismiss.

### Background

In this case, violations of the antitrust laws are alleged. Specifically, plaintiffs contend that defendant Aura has violated § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by three practices in which Aura has engaged. These practices are: (1) the institution of a Ten Million Dollar lawsuit against plaintiff Vintage in Wayne County Circuit Court; (2) the disparaging of plaintiff's products and services to plaintiff's clients by Aura's agents; and (3) the purchase of Wine Consultants, another wine promoting company.

The events leading up to the institution of the present lawsuit are not disputed. Vintage and Aura are competitors who each provide the service of wine promotion. Both Aura and Vintage are engaged in the promotion and marketing of wine and wine related products through wine samplings. Although it is unclear exactly how Aura and Vintage carry out their business, it appears that they solicit individuals to attend wine samplings at which they promote wine and wine products. The individuals then order any desired wines from wine retailers such as plaintiff Direct Imports. The wine retailers pay commissions on these sales to the involved promotion company.

The relationship between Aura and Vintage has been less than smooth. On May 23, 1984, Aura filed suit against Vintage in Wayne County Circuit Court. In that case, Civil Action No. 84–415976–CZ assigned to Judge Marvin Stempien, Aura claimed that Vintage and Direct Imports via their owner and employees fraudulently misappropriated trade secrets, converting the secret information to their own use. Specifically, Aura alleged that customer list information was taken by Vintage's owner and employees. These individuals were former Aura employees. Aura amended its state complaint twice, once on October 30, 1984 and also on December 14, 1984.

A temporary restraining order against Vintage and Direct Imports was granted by Judge Richard C. Kaufman on May 23, 1984. A preliminary injunction was issued on September 20, 1984. Two other preliminary instructions were subsequently issued following the two amended complaints, the first on October 31, 1984 and the second on January 2, 1985. Although Vintage and Direct sought dissolution of the preliminary injunctions on January 16, 1985 and January 28, 1985, Judge Stempien did not

dissolve the injunctions. They apparently remained in effect until Judge Stempien rendered his decision in this case on March 3, 1988.

In his opinion, Judge Stempien concluded that Aura Promotions was entitled to summary disposition against defendants Gene Cope & Associates, Vintage Wine Selections, Direct Imports, Ltd., and Guido Capaldi. The defendants companies are the same companies who constitute the plaintiff in the instant case. Judge Stempien also held that Guido Capaldi had engaged in a scheme to defraud by a series of well-planned acts. As concluded by Judge Stempien, the purpose of the scheme was to obtain Aura's customer list.

Vintage filed a counter-complaint in the state court action on November 8, 1984, amending it on May 17, 1985. In the counter-complaint, Vintage and Direct alleged that Aura instituted the state proceeding solely to drive Vintage out of business. It was also alleged that Aura disparaged Vintage's products, and that Aura sought maliciously to destroy Vintage's business. As a comparison of the state counter-complaint with the complaint in the instant action reveals, the two raise the same issues, albeit labeled differently.[2] Notably, Judge Stempien did not rule on the counter-complaint in his March 3 opinion. Rather, as indicated by the parties to this Court at hearing, Judge Stempien reserved his ruling on the counter-complaint.

### State Lawsuit and Noerr–Pennington Immunity

Despite the undecided status of the state counter-complaint, the magistrate properly recommended dismissal of Vintage's claim that Aura's state lawsuit against Vintage constituted an antitrust violation under § 2 of the Sherman Act, 15 U.S.C. § 2. Pursuant to § 2 of the Sherman Act, 15 U.S.C. § 2, monopolization, attempts to monopolize, and combinations or conspiracies to monopolize interstate or foreign trade are condemned. This con-

demnation of monopolizing clearly extends to actual monopolies, and also is applicable to unilateral acts by a single actor. Monopolies are condemned under § 2 where a business acquires or maintains monopoly power through competitively unreasonable practices. If unreasonable practices are not utilized, the monopoly is not violative of § 2.

The elements of monopolization were clarified in *United States v. Grinnell*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). As set forth in *Grinnell*, the elements of monopolization are: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. 384 U.S. at 570–71, 86 S.Ct. at 1703–04. *See also Potters Medical Center v. City Hospital Ass'n*, 800 F.2d 568, 574 (6th Cir.1986). Thus, there are three items which must be established in a § 2 case. First, the relevant market must be defined. Second, consideration must be given to whether the alleged monopolizer has monopoly power. Finally, it must be determined whether monopoly power was willfully acquired or maintained. W. Holmes, *Antitrust Law Handbook* § 2.03 (1987).

However, even where a § 2 violation has occurred, a monopolizing company may be immune from antitrust liability. There is a general rule of antitrust immunity for the right to petition government. This rule is known as the *Noerr–Pennington* doctrine for the two Supreme Court cases in which it was developed, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). These cases established that lobbying and other similar actions by businessmen to obtain legislative or executive action do not violate the antitrust laws, even though those

---

**2.** Thus, the state counter-complaint alleges unfair business competition, while the federal

complaint alleges an antitrust violation.

actions are intended to eliminate competition or otherwise restrain trade.

■ In a later case, *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the *Noerr–Pennington* doctrine was extended to immunize judicial actions taken by competitors. Hence, a competitor's conduct in instituting a lawsuit against another competitor is immune from antitrust liability unless that conduct is demonstrated to fall within the "sham exception" to the *Noerr–Pennington* doctrine. Under the "sham exception," judicial actions will not be immune from antitrust liability if taken to harass a competitor or bar the competitor from meaningful access to the government. *California Motor Transport,* 404 U.S. at 510–11, 92 S.Ct. at 611–12. The "sham exception" has been narrowly construed by courts. *See Westmac, Inc. v. Smith,* 797 F.2d 313 (6th Cir. 1986); *Razorback Ready Mix Concrete Co. v. Weaver,* 761 F.2d 484 (8th Cir.1985).

Of importance to the present case, the Sixth Circuit held in *Westmac* that "when a lawsuit raises a legal issue of genuine substance, it raises a rebuttable presumption that it is a serious attempt to obtain a judgment on the merits instead of a mere sham or harassment. 797 F.2d at 318. Thus, "the evidentiary burden [is] on the antitrust plaintiff to prove that the action of the defendant comes within the sham exception to *Noerr–Pennington* in this kind of case." *Id.*

■ When the *Westmac* principles are applied to the facts of the instant case, it is clear that Vintage has not overcome the rebuttable presumption that Aura's are genuine judicial activities. Aura has actively pursued its state court lawsuit against Vintage, garnering three preliminary injunctions and a decision on the merits in its favor. Additionally, a review of Judge Stempien's opinion granting summary disposition for Aura demonstrates that Aura's lawsuit raised substantial issues of state law. Vintage has in no way shown that Aura's state suit was a sham. In fact, although Vintage sought on two separate occasions to have the preliminary injunc-

tions lifted, the state court refused to dissolve the injunctions. Thus, the Court finds that Aura's state suit is a genuine judicial activity. Therefore, the *Noerr–Pennington* doctrine immunizes Aura from antitrust liability as to its state court lawsuit. Under these circumstances, the Court need not address the merits of Vintage's claim that Aura's state lawsuit constituted a § 2 antitrust violation.

Since *Noerr–Pennington* immunizes Aura from antitrust liability for its state suit, dismissal of that portion of the present suit which alleges the state suit is a sham is appropriate. The magistrate has recommended such dismissal in her report and recommendation, which shall be adopted as to this issue.

*Other Alleged Antitrust Violations*

The magistrate's report and recommendation fails to address the two other allegedly anticompetitive practices in which Vintage claims Aura engaged. As stated earlier, these practices are: (1) the disparaging of Vintage's products and services; and (2) the purchase of Wine Consultants. However, Vintage's complaint merely sets forth conclusory allegations in support of these claims. These allegations give no indication of who disparaged Vintage or how this was supposedly accomplished. There is also no indication of how Aura's acquisition of Wine Consultants constituted willful acquisition or maintenance of monopoly power. Rather, Vintage assumes that merely showing an increase in Aura's market share in Michigan is sufficient to demonstrate an antitrust violation.

It is well-established that the possession of monopoly power in itself is not illegal. *United States v. Griffith,* 334 U.S. 100, 107 and n. 10, 68 S.Ct. 941, 945–46 and n. 10, 92 L.Ed. 1236 (1948). Vintage must demonstrate willfulness on Aura's part or its antitrust claims fail. Such willfulness is not demonstrated by the mere allegation that Aura's percentage of a vaguely defined market increased. *See Grinnell, supra* (monopoly power, including that achieved through acquisition, must be consciously acquired). Vintage's argument that Aura

engaged in anticompetitive behavior based on Aura's increase in Michigan market share begs the question in two ways. First, it assumes that the relevant geographic market is Michigan. Second, it assumes that wine promotion services is the relevant product market. These assumptions fail to take into account Supreme Court cases establishing that the "interchangeability in use" with alternative products must be considered when establishing the relevant market, as must the "cross-elasticity of demand." *United States v. E.I. duPont de Nemours & Co.,* 351 U.S. 377, 394–95, 76 S.Ct. 994, 1006–07, 100 L.Ed. 1264 (1956); *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523–24, 8 L.Ed.2d 510 (1962). That is, the relevant market must take into account whether there are geographic or product substitutes for Michigan wine promotion services.[3] As the complaint does not consider such substitutes, Vintage has not properly defined the relevant market. Notably, at hearing, Vintage admitted that its definition of the relevant market was lacking.

In view of the inadequate relevant market definition contained in Vintage's complaint, the Court finds Vintage's market share analysis faulty. Without an adequate relevant market definition, the share a company has in a market cannot be ascertained. Therefore, the Court cannot determine if Aura had monopoly power in the relevant market.

■■ Since Vintage's amended complaint fails to adequately establish any of the basic elements of a § 2 monopolization claim, the Court finds that dismissal of the complaint as to the disparagement claim and as to the purchase of Wine Consultants is appropriate. Taking the facts plead in the complaint as true, it is apparent that Vintage can prove no set of facts in support of its claim which would entitle it to relief under the federal antitrust laws. Although dismissals of federal antitrust cases are to be granted very sparingly, *Hospital*

*Bldg. Co., supra* 425 U.S. at 746, 96 S.Ct. at 1853, the present case is one in which dismissal is appropriate. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (7th Cir.1984) (although threshold of sufficiency needed to survive motion to dismiss in antitrust action is low, at least direct or inferential allegations in the complaint must cover all the material elements of an antitrust claim). Due to Vintage's total failure to establish the elements of its monopolization claim, no federal antitrust claim has been stated. Dismissal of the complaint is, therefore, appropriate. The dismissal shall extend to all federal antitrust issues as to which Aura was not heretofore immunized by the *Noerr–Pennington* doctrine.

Although the Court is dismissing Vintage's antitrust claims which are based on Aura's alleged disparagement of Vintage and Aura's purchase of Wine Consultants, it shall allow Vintage to file a second amended complaint as to those claims. The Court finds that the interests of justice require it to allow such amendment. In amending its complaint, Vintage is specifically directed to properly establish the relevant market, to provide the Court with a proper indication of whether Aura possesses monopoly power, and to set forth such facts as are necessary to demonstrate willfulness on Aura's part. If on amendment no antitrust claim is stated by Vintage's complaint, the Court shall dismiss that complaint with prejudice.

### State Claims

Although Vintage's lawsuit may present state claims, the Court finds it unnecessary to rule on those claims. Jurisdiction over the state claims would only be vested in this Court under the doctrine of pendent jurisdiction. In choosing whether to exercise jurisdiction,

[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in

---

**3.** As set forth by the Supreme Court in *Grinnell,* 384 U.S. at 572, 86 S.Ct. at 1704, "[w]e see no barrier to combining in a single market a number of different products or services where that combination reflects commercial realities."

order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Carnegie–Mellon University v. Cahill*, 484 U.S. ——, —— – ——, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720, 729–30 (1988).

 In the present case, the Court declines jurisdiction over the pendent state claims. These claims, embodied in Vintage's state counter-complaint, are currently pending in state court. Notably, the state counter-complaint was filed before the instant lawsuit was filed. Comity, judicial economy, convenience, and fairness will clearly be best served if this Court declines jurisdiction of any state claims which may be embodied in Vintage's complaint. Therefore, the Court shall dismiss any state law claims which Vintage's amended complaint may present without prejudice so that they may properly be decided by the state court.

For the reasons set forth above,

IT IS HEREBY ORDERED that Magistrate Virginia M. Morgan's Report and Recommendation of April 27, 1987 is ACCEPTED and ADOPTED IN PART as to defendant Aura Promotion's *Noerr–Pennington* antitrust immunity for its state court lawsuit, and REJECTED IN PART inasmuch as it recommends dismissing the entire complaint filed by plaintiff Gene Cope & Associates, d/b/a Vintage Wine Selections and Direct Imports, on the basis of the *Noerr–Pennington* doctrine.

IT IS FURTHER ORDERED that plaintiff's complaint is DISMISSED inasmuch as it alleges that defendant Aura Promotions' state lawsuit constituted a federal antitrust violation.

IT IS FURTHER ORDERED that defendant Aura Promotions' motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that plaintiff's complaint is DISMISSED without prejudice for failure to state a claim as to its allegations that disparagement of Vintage by Aura and Aura's purchase of Wine Consultants, Inc. constituted an antitrust violation; however, plaintiff may amend its complaint as to those claims in accordance with the directions contained in the accompanying opinion within 20 days of the date of this order.

IT IS FURTHER ORDERED that any state law claims which may be embodied in the plaintiff's complaint are DISMISSED without prejudice.