UNITED STATES of America, Plaintiff,

v.

TELECTRONICS PROPRIETARY, LTD.
and Telectronics Limited, Defendants
and Counterclaim-Plaintiffs,

v.

UNITED STATES of America and Zimmer U.S.A., Inc.,
Counterclaim-Defendants.

Civ. A. No. 80–M–981.

United States District Court,
D. Colorado.

June 8, 1983.

Vito J. DiPietro, Thomas J. Scott, Jr., Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, D.C., Janis

**754**

E. Chapman, Asst. U.S. Atty., Denver, Colo., for plaintiff.

James D. Hinga, Baker & Hostetler, Denver, Colo., for co-plaintiff Zimmer U.S.A., Inc.

Bruce Klaas, Klaas & Law, Denver, Colo., William C. Nealon, Vice President and Gen. Counsel, Suffield, Conn., Michael I. Rackman, Gottlieb, Rackman & Reisman, P.C., New York City, for defendants and counterclaim-plaintiffs.

### MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MATSCH, District Judge.

This is a patent infringement action for injunctive relief and damages brought pursuant to 35 U.S.C. §§ 283, 284 and 285. Jurisdiction is found in 28 U.S.C. §§ 1338 and 1345. The defendants have asserted patent misuse as an affirmative defense and counterclaim.

The matter now before this court is the plaintiff's motion for partial summary judgment dismissing that counterclaim and affirmative defense. There are no genuine issues of material fact relevant to the question of whether patent misuse can prevent enforcement of the patent in this action.

The subject patent is for an electronic bone growth stimulation device developed at the University of Pennsylvania under a "patent rights" contract with the Office of Naval Research ("ONR"). The patent, issued to the United States on October 22, 1974, was subsequently licensed to counterclaim-defendant Zimmer U.S.A., Inc. on an exclusive basis. The defendants, in the counterclaim and affirmative defense at issue, challenge the propriety of this exclusive license grant. Specifically, it is contended that Zimmer U.S.A., Inc., in its exclusive license application, made material misrepresentations concerning product commercialization which, under the ONR licensing regulations, require revocation or cancellation of the exclusive license award. The ONR's refusal to revoke and pursuit of this infringement action are alleged to constitute such "patent misuse" as to prevent enforcement of the patent.

■ The equitable doctrine of patent misuse was developed in a series of cases involving "tying" arrangements. In those cases, the Supreme Court held that an owner of a patent could not condition a license upon a requirement that the licensee use unpatented materials or devices. *Carbice Corp. v. American Patents Dvp. Corp.*, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819 (1931); *Morton Salt Co. v. Suppiger Co.*, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); *B.B. Chemical Co. v. Ellis*, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367 (1942); *Mercoid Corp. v. Mid-Continent Invest. Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944). The subsequent extension of the "misuse" doctrine, premised on the equitable maxim of "unclean hands," has precluded enforcement in a variety of patentee sale and licensing practices. *See generally* Dellers' Walker on Patents §§ 646–670 (2d ed. 1973). Although the exact parameters of the doctrine remain indistinct, the policy remains equitable: preventing a patentee from extending the *economic effect* beyond the legal monopoly involved in the grant of the patent. *Dawson Chemical v. Rohm & Haas Co.*, 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Riker Lab., Inc. v. Gist-Brocades N.V.*, 636 F.2d 772 (D.C.Cir.1980); *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 468 F.2d 225 (7th Cir.1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973).

■ There are no "classic" acts of patent misuse alleged in this case, e.g. (1) requiring the purchase of unpatented goods for use with patented apparatus or processes, (2) prohibiting production or sale of competing goods, or (3) conditioning the granting of a license under one patent upon the acceptance of another and different license. Chisum, Patents § 19.04[3], at p. 19–103 (1982). Misuse of a patent, however, may be inferred from the totality of a licensor's conduct and business practices.

*Duplan Corp. v. Deering Milliken, Inc.,* 444 F.Supp. 648 (D.S.C.1979), *rev'd in part on other grounds,* 594 F.2d 979 (4th Cir. 1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 666, 62 L.Ed.2d 645 (1980); *Transitron Electronic Corp. v. Hughes Aircraft Co.,* 487 F.Supp. 885 (D.Mass.1980), *aff'd,* 649 F.2d 871 (1st Cir.1981). Thus, some inquiry into the nature of the ONR licensing conduct is required.

In general, a patentee has the untrammeled right to suppress his patent; to exact royalties as high as he can negotiate with the leverage of his monopoly and to select the licensees who will be authorized to practice the patent on an exclusive or nonexclusive basis. *See e.g. United States v. Westinghouse Elec. Corp.,* 648 F.2d 642 (9th Cir.1981); *SCM Corp. v. Xerox Corp.,* 645 F.2d 1195 (2d Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982); *LaSalle Street Press v. McCormick & Henderson, Inc.,* 445 F.2d 84 (7th Cir.1971). *See also Bement v. National Harrow,* 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058 (1902). Indeed, the unilateral right to license, exclusively or otherwise, or to refuse to license at all, reflects the essence of the statutory patent monopoly. *Zenith Radio Corp. v. Hazeltine Research, supra,* 395 U.S. at 135, 89 S.Ct. at 1582; *United States v. Westinghouse Elec. Corp., supra,* at 647. It therefore follows that a patentee's decision to license his patent on an exclusive basis, or to refuse to revoke a license procured fraudulently or for anticompetitive motives, may not, without more, be a defense to the patentee's infringement action. Such unilateral licensing conduct does no more than employ means "normally and reasonably adapted" to maintain the monopoly under the law. *See United States v. General Electric,* 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 (1926); *Hensley Equipment Co. v. ESCO Corp.,* 383 F.2d 252 (5th Cir.1967).

In the instant action, we are presented with the licensing activities of a *government patentee.* Thus, extensive regulations addressing, inter alia, the terms, conditions and restrictions on federal licensing grants are implicated. Of immediate consequence are those regulations pertaining to the licensing of government inventions in the custody of the Department of Navy. 32 C.F.R. § 746.1 et seq. Detailed inquiry into the enumerated licensing standards is not necessary to a resolution of the present issue: Can a failure to comply with articulated licensing standards prevent the government from enforcing the patent? The answer is no.

It is true that the regulations express an unequivocal preference for nonexclusive license awards. *See* 32 C.F.R. §§ 746.2; 746.7. In addition, discretionary revocation authority, premised on material misrepresentations in the license application, is expressly provided. 32 C.F.R. § 746.11(e). However, neither the existence of this regulatory licensing scheme, nor agency actions in contravention of it, implicate the policies supporting the misuse doctrine. Procedural licensing irregularities do not, of themselves, "exploit" or "extend" the scope of the underlying patent monopoly. No enhanced economic effect, or dilution of the market for competing products or processes, results from the government's action in issuing the exclusive license or from the failure to seek revocation of it. There is no showing that the patentee is using the strength of the patent grant to wield power in the public domain. Thus, the counterclaim and affirmative defense do not, as a matter of law, preclude the plaintiff from proceeding with this action. The claims made against the exclusive licensee for anticompetitive conduct are not involved in this motion for summary judgment.

Upon the foregoing, it is

ORDERED, that a summary judgment in favor of the plaintiff and against the defendants on the second affirmative defense and second counterclaim, ordered filed on November 4, 1982 and they are, accordingly, dismissed as to the plaintiff.