**LUND INDUSTRIES, INC., Plaintiff,**

v.

**WESTIN, INC., Clarence Westin, and
Nelson Hood Exchange, Inc.,
Defendants.**

**Civ. No. 4–90–46.**

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 10, 1990.

Timothy R. Conrad, Philip Peter Caspers, Merchant Gould Smith Edell Welter & Schmidt, Thomas Jerome Shroyer, Paul G. Neimann, David P. Jendrzejek, Moss & Barnett, Minneapolis, Minn., for plaintiff.

Terence Melling Fruth, Norman J. Baer Fruth & Anthony, Minneapolis, Minn., La-Mar Thomas Piper, Piper Law Firm, St. James, Minn., for defendants.

**MEMORANDUM OPINION
AND ORDER**

DIANA E. MURPHY, District Judge.

Plaintiff Lund Industries, Incorporated (Lund) sued defendants Westin, Incorporated (Westin Inc.), Clarence Westin, and Nel-

son Hood Exchange, Incorporated (Nelson Hood) for infringing Lund's patents on truck visors, with additional claims against Westin, Inc. and/or Clarence Westin for common law misuse of confidential information, breach of fiduciary duty, interference with precontractual relations, violation of the Uniform Trade Secrets Act, violation of the Lanham Act, violation of Minnesota's Deceptive Trade Practices Act, fraud and unfair competition. Clarence Westin and Westin, Inc., answered and counterclaimed for patent invalidity and sham litigation against Lund for bringing its suit, and raised the affirmative defenses of failure to state a claim, unclean hands, and patent misuse. Defendant Nelson Hood answered and raised the same three affirmative defenses, in addition to affirmative defenses related to patent invalidity and noninfringement. Before the court is Lund's motion for partial summary judgment to dismiss the sham litigation counterclaim and the related affirmative defenses of unclean hands and patent misuse.

## I.

Lund makes and sells fiberglass and plastic automotive accessories, including vehicle visors which comprise its primary product line. Lund owns U.S. Patents Des. 288,309 and Des. 291,295 (the patents-in-suit) for visor products.

Clarence Westin was a member of Lund's board of directors from January, 1988 to July 27, 1989. He is principal shareholder and president of Westin, Inc.[1] Three months after his resignation from Lund's board, Westin, Inc. introduced its new visor product at a November, 1989, trade show. Nelson Hood manufactures Westin, Inc.'s visor products.

Lund alleges that the Westin, Inc. visor infringes on its visors' patents and that the Westin, Inc. visor was developed through Clarence Westin's misappropriation of Lund's confidential information. Lund argues that it has been the leader in the industry in the development, patenting and marketing of its visor products, and that this· position has resulted in copying by many others to whom Lund has had to respond with cease and desist letters and, if need be, suits to protect its patents. This defense of its patent rights, Lund contends, has been with the good-faith belief that its patents are valid and infringed.

Lund says it sued the defendants because of Clarence Westin's deliberate disregard for Lund's rights, in that while still a board member, Mr. Westin used Lund's confidential information concerning the design and manufacture of visors to develop his own competing product. Lund points to specific contacts between Mr. Westin and Lund's Mexican suppliers, and between Mr. Westin and General Electric Plastics. In these contacts, Lund contends, Mr. Westin sought to benefit Westin, Inc. at the expense of Lund, to whom he owed fiduciary obligations. Lund points to the timing of Mr. Westin's resignation from Lund's board as evidence of his intent.

Lund argues that the Westin visor infringes its patents, since it is virtually an identical copy, and that Mr. Westin has admitted this to an industry expert. Lund states that it sought the advice of counsel before filing this lawsuit, and that it has

1. Westin, Inc. filed for bankruptcy protection on August 22, 1990, and is subject to the bankruptcy court's automatic stay. Plaintiff states that it is not seeking any relief at this time against Westin, Inc., but only against Clarence Westin and Nelson Hood.

Counsel for defendants requested that the September 28, 1990, hearing be postponed until November because of the effects of the bankruptcy filing. Fruth & Anthony initially represented Westin, Inc., Clarence Westin, and Nelson Hood per indemnification agreements between Westin, Inc. and the latter two defendants. In bankruptcy, however, Westin, Inc. is represented by Fredrickson & Byron, which Lund says would have a conflict in representing Westin, Inc., against Lund. The papers in opposition to Lund's motion for partial summary judgment were submitted by Fruth & Anthony for Clarence Westin and Nelson Hood.

Lund's counsel opposed a continuance, arguing that irreparable harm continues as long as the allegedly infringing products remain on the market, and pointing out that Clarence Westin owns 90% of Westin, Inc.

The court directed that counsel could address these concerns at the hearing on September 28, and they did. The court finds that the bankruptcy status of Westin, Inc., does not prevent consideration of plaintiff's motion at this time.

not attempted to use the suit as leverage in negotiations to acquire Westin, Inc.

Defendants Clarence Westin and Nelson Hood respond that Lund has mischaracterized their counterclaim for sham litigation. Defendants did not mean that all of Lund's claims were sham litigation, only the patent claims. Defendants contend that Lund brought its patent claims in order to suppress competition in the visor market. They develop three arguments to support this basic contention.

First, defendants argue that the patents-in-suit are invalid, chiefly because they are design patents with designs which are dictated primarily by functional needs and therefore unpatentable.[2]

Second, defendants argue that even if the patents are valid, Lund has sought to extend the scope of the patents in ways that have an anti-competitive effect. Lund sent more than twenty cease and desist letters to others in the industry claiming patent infringement, and demanding damages and an end to production of infringing products.[3] This shows, defendants claim, that Lund has attempted to monopolize the visor market through its patent enforcement efforts. Defendants contend that this prior conduct of Lund creates an inference of sham litigation in the present action.

Third, defendants argue that the present patent litigation was commenced after Lund's attempt to acquire Westin, Inc. failed, and that Lund's true goal is to eliminate its competition. Defendants point to a mid-December, 1989 meeting between Clarence Westin and John Kubinski, Lund's Chief Financial Officer, and William McMahon, Lund's President, at which they discussed the possible acquisition of Westin, Inc. Kubinski rejected Clarence Westin's proffered sale price, and told him that if they could not negotiate a deal, Lund would sue. The present case was filed about one month later. Defendants contend that the true goal of this action was revealed in a letter from Lund's counsel to the bankruptcy counsel for Westin, Inc., dated August 29, 1990:

> We are writing to receive your assurances that Westin, Inc. will acknowledge the validity of our patents and will immediately discontinue the manufacture, use, distribution, promotion or sale of visors. ... If Westin, Inc. is not inclined to immediately discontinue its activities in the visor business, and we must seek relief from the [bankruptcy] stay, an active controversy will then exist between Lund and your representation of Westin, Inc.

(Defendants' br., Exh. S). Defendants argue that this letter at least raises a genuine issue of material fact as to whether the goal of the present litigation is to obtain a judgment or to eliminate defendants as competitors.

## II.

Lund has moved for summary judgment on defendants' sham litigation counterclaim and defendants' affirmative defenses of unclean hands and patent misuse. Defendants' affirmative defenses are essentially restatements of the sham litigation counterclaim in defensive form. Defendants have effectively conceded this by opposing Lund's motion solely on the ground of the validity of their sham litigation counterclaim.[4] Lund's motion for summary judg-

---

**2.** Defendants also argue that Lund's patents-in-suit are invalid because a prior Lund patent had been obtained by fraud. Lund replies that the prior patent has expired and entered the public domain, that it has not asserted the prior patent in the present case, and that under the appropriate legal standards the prior patent is irrelevant to defendants' claim of patent misuse and sham litigation regarding the patents-in-suit. Lund's position is clearly correct. *See FMC Corp. v. Hennessy Indus., Inc.,* 836 F.2d 521, 524 (Fed. Cir.1987).

**3.** Defendants rely on the affidavit of their legal assistant, Lisa Bruley, who recounts conversations with unnamed recipients of "many" of the cease and desist letters as to the effects of these letters. This affidavit does not meet the requirements of Fed.R.Civ.P. 56(e). *See also* J. Moore, *Federal Practice,* ¶ 56.22[1] (1988) ("Hearsay testimony and opinion testimony that would not be admissible if testified to at trial may not be properly set forth in an affidavit.").

**4.** These affirmative defenses read: "Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands" and "Plain-

ment on the sham litigation allegation must be considered in light of the legal standard for summary judgment.

■ On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, however, the non-moving party must show through specific evidence that there are material facts in dispute creating a genuine issue for trial; it may not rest only upon the allegations or denials of its pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the non-moving party cannot support each essential element of its claim, summary judgment must be granted. *Id.*

■ "Sham litigation" is a concept which originated in the antitrust field. According to the *Noerr–Pennington* doctrine, the filing of a lawsuit is privileged or immune from antitrust or tort liability under the First Amendment unless it is a mere sham intended to disguise or promote unprivileged anticompetitive conduct. In this circuit the sham litigation exception is narrow: -

> It is only where a [party's] resort to the courts is accompanied or characterized by illegal or reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or it is so clearly baseless as to amount to an abuse of

process, that the *Noerr–Pennington* cloak of immunity provides no protection. *Surgidev Corp. v. Eye Technology, Inc.,* 625 F.Supp. 800, 803 (D.Minn.1986), *quoting Razorback Ready Mix Concrete Co. v. Weaver,* 761 F.2d 484, 487 (8th Cir.1985). Further, according to *Surgidev,* 625 F.Supp. at 804, the "mere fact that plaintiff's lawsuit threatens harm to defendants as competitors is not sufficient grounds to deny Plaintiff access to the Courts." Parties are not exposed to liability for filing suits "to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors." *Id., quoting First American Title Co. v. South Dakota Land Title Ass'n,* 714 F.2d 1439, 1447 (8th Cir.1983).

■ The parties agree that *Surgidev* and *Razorback* set the appropriate standards for sham litigation, but part ways as to how these standards, developed in the antitrust context, apply to a patent suit. Defendants argue that their sham litigation counterclaim and patent misuse affirmative defense cannot be dismissed absent a determination of the validity of Lund's patents, citing *Carter–Wallace, Inc. v. Riverton Laboratories, Inc.,* 47 F.R.D. 366, 370 (S.D.N.Y.1969). Reliance on this case no doubt explains defendants' extensive discussion of the validity of Lund's various patents (in and out of suit). *Carter–Wallace* has never been cited in a reported opinion for the proposition put forward by defendants, however, and with good reason. Defendants interpret the case backwards. It states that in order to *prevail* on their

---

tiff has so misused and abused the '309 patent and/or '295 patent in violation of the Federal and Minnesota antitrust laws so as to render the patent(s) unenforceable." (Joint and Separate Answer and Counterclaims of Defendants Westin, Inc. and Clarence Westin to Plaintiff's Amended Complaint, ¶¶ 51–52; Answer of Defendant Nelson Hood Exchange, Inc. to Plaintiff's Amended Complaint, ¶¶ 14–15). The defendants have tied their affirmative defense of patent misuse to alleged antitrust violations, but they have not briefed facts to show such violations (only vague and unsupported allegations of injury to competition). Defendants have also not disputed Lund's argument that the affirmative defense of unclean hands is based on the same assertions as the sham litigation counterclaim (Lund's br. at 20); defendants do not

discuss this affirmative defense at all. The one case defendants cite which refers to unclean hands, *United States v. Telectronics Proprietary, Ltd.,* 607 F.Supp. 753 (D.Colo.1983), specifically connects the defense of unclean hands to the defense of patent misuse due to antitrust violations. It also holds that such defenses are unavailable without evidence of an "economic effect" on the market for competing products, *id.* at 754–55. In the present case, defendants have not presented evidence which might raise disputed material facts as to such an economic effect from Lund's actions, nor have they presented evidence as to antitrust violations. For all these reasons, defendants' affirmative defenses of unclean hands and patent misuse can be considered together with their counterclaim of sham litigation.

patent misuse claim, defendants need to establish patent *in* validity, among other things. It does not state that plaintiff must affirmatively establish patent validity in order to defeat the defense. This is in keeping with the normal presumption that a patent is valid, 35 U.S.C. § 282. Thus, defendants cannot rely on disputed material facts regarding the validity of the patents-in-suit to defeat this motion for partial summary judgment.

■ Lund correctly cites the standard for sham litigation in the patent context. Defendants must show clear and convincing evidence of bad faith litigation, proving that plaintiff had actual knowledge that the patents-in-suit were invalid before bringing suit. *Argus Chemical Corp. v. Fibre Glass–Evercoat Co.*, 812 F.2d 1381, 1386 (Fed.Cir.1987); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 876 (Fed.Cir.1985); *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 689, 62 L.Ed.2d 659 (1980); *Contour Chair Lounge Co. v. True–Fit Chair, Inc.*, 648 F.Supp. 704, 717 (E.D.Mo.1986). Patent infringement suits are presumed to be in good faith, a presumption which can only be rebutted by clear and convincing evidence of bad faith. *Carpet Seaming Tape Licensing Corp. v. Best Seam, Inc.*, 616 F.2d 1133 (9th Cir. 1980); 35 U.S.C. § 271(d).

■ In the present case, the burden is on defendants to come forward with material evidence of Lund's bad faith in bringing its patent suit. None of the four areas where defendants contend there are genuine issues of disputed facts [5] is relevant to the issue of Lund's alleged bad faith. Defendants have simply failed to raise any material evidence that Lund had actual knowledge of the invalidity of its patents before instigating the present patent enforcement action. At oral argument, defendants pointed to three pieces of evidence from which they infer Lund's bad faith: (1) Lund has consistently refused to avoid patent litigation, and has used its litigation to try to extend the reach of its patents; (2) Lund's cease and desist letters to competi-

tors had an anticompetitive effect; and (3) when Lund connected this action to its acquisition attempt for Westin, Inc., it revealed its true and improper purpose.

■ This evidence does not raise any inference that Lund had *actual knowledge* of the invalidity of its patents before bringing suit on these patents; it only raises issues as to Lund's intent or purpose in bringing the suit. Case law is clear that there must be evidence of actual knowledge to support a claim for sham patent litigation, otherwise there would be too great a potential to "chill" legitimate patent rights enforcement actions. *Loctite, supra,* 781 F.2d at 876–77; *Handgards, supra,* 601 F.2d at 996. Without such evidence, the sham litigation claim cannot go forward.

Lund is entitled to summary judgment dismissing Clarence Westin's sham litigation counterclaim, and also the affirmative defenses raised by Clarence Westin and Nelson Hood of unclean hands and patent misuse due to antitrust violations.

### III.

Lund relies on *American Building Maintenance Industries, Inc. v. Maintenance Service Systems, Inc.*, 12 U.S.P.Q.2d 1068, 1989 WL 90274 (D.N.M.1989) to support its motion for Rule 11 sanctions against defendants for bringing this counterclaim. In *American Building Maintenance*, the court dismissed an antitrust counterclaim (of patent misuse and sham litigation) alleging that the plaintiff's lawsuit was brought only after the defendants failed to capitulate on an acquisition. That case is distinguishable, however, in that it dismissed the counterclaim on the basis of a complete failure of pleading under Fed.R. Civ.P. 12(b)(6). The counterclaim alleged a violation of Section One of the Sherman Act, 15 U.S.C. § 1, and its state law counterpart, N.M.S.A.1978, § 57–1–2 (Repl. Pamp.1987), but failed to allege any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade" which could bring it within the pur-

---

**5.** *See* defendant's brief at 13.

view of 15 U.S.C. § 1. *American Building Maintenance*, 12 U.S.P.Q.2d at 1070. In contrast, defendants' counterclaim in the present case does not allege an antitrust violation and thus does not have to be pleaded under the Sherman Act's requirements.[6] Lund has not shown that defendants' counterclaim and affirmative defenses were brought for any improper purpose or without reasonable grounds in fact and law, so the motion for sanctions should be denied.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. The motion of plaintiff Lund Industries, Inc., for partial summary judgment dismissing defendant Clarence Westin's second counterclaim (entitled "Sham Litigation") is granted;

2. The motion of plaintiff Lund Industries, Inc., for partial summary judgment striking the affirmative defenses of unclean hands and patent misuse of defendants Clarence Westin (as set forth in paragraphs 51 and 52 of the Joint and Separate Answer and Counterclaims of Defendants Westin, Inc. and Clarence Westin to Plaintiff's Amended Complaint) and Nelson Hood Exchange, Inc. (as set forth in paragraphs 14 and 15 in the Answer of Defendant Nelson Hood Exchange, Inc. to Plaintiff's Amended Complaint) is granted;

3. The motion of plaintiff Lund Industries, Inc., for sanctions is denied.

---

6. Defendants' affirmative defense of patent misuse does allege antitrust violations by Lund, but since neither party has spent any time or effort briefing these alleged antitrust violations, this affirmative defense cannot provide the basis for awarding sanctions as in *American Building Maintenance*.