**DATASCOPE CORP., Plaintiff,**

v.

**VASCULAR SOLUTIONS, INC., Defendant.**

**No. CIV 99–1117 DWF/AJB.**

United States District Court, D. Minnesota.

March 26, 2001.

Edward M. Laine, Craig J. Lervick, and Cyrus A. Morton, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, for Plaintiff.

Hope E. Melville, and James W. Geriak, Lyon & Lyon, Irvine, CA, Lisa C. Ward, Lyon & Lyon, Los Angeles, CA, Randall T. Skaar, James H. Patterson, and Eric H. Chadwick, Patterson & Keough, Minneapolis, MN, Kenneth S. Roberts, Lyon & Lyon, Costa Mesa, CA, for Defendant.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned District Judge on October 13, 2000, pursuant to Plaintiff Datascope Corp.'s Motion for Summary Judgment. On March 15, 2000, this Court issued summary judgment in favor of Defendant Vascular Solutions Inc., dismissing Plaintiff's complaint requesting declaratory and injunctive relief for alleged current and future patent infringement. The current motion relates to Defendant Vascular Solutions Inc.'s counterclaims alleging tortious interference and unfair competition. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment is granted.

### Background

Plaintiff Datascope Corp. ("Datascope") is a medical device company and the assignee of Janzen U.S. Patent No. 5,725,498 ("the '498 patent"), which relates to a methodology for sealing arterial punctures. Defendant Vascular Solutions, Inc. ("VSI") is a private corporation in the process of seeking approval from the U.S. Food and Drug Administration ("FDA") for a vascular sealing device called the Duett.™

Datascope's original complaint sought declaratory and injunctive relief for cur-

rent and future infringement of the '498 patent. The Court declined to grant such relief. With respect to Datascope's claims of past and present patent infringement, the Court found that VSI's conduct in question was reasonably related to the clinical development of the device, and thus within the statutory clinical trial exemption of 35 U.S.C. § 271(e)(1). With respect to the alleged future infringement, the Court declined to exercise its discretion to issue declaratory judgment on the issue, noting the uncertainty of when approval may be granted, the possibility of adjustments to the device as the approval process ensues, and the public policy of maintaining the trial period as a safe haven from liability.

The current motion relates to VSI's counterclaims for tortious interference and unfair competition based on allegations that Datascope's patent suit was intentionally brought to affect VSI's initial public offering ("IPO"). On June 29, 1999, VSI submitted its application to the FDA for pre-market approval of the Duett.™ During June and July 1999, VSI engaged in discussions with several investment banks, including CIBC World Markets, to determine which firm would handle the company's IPO. Ultimately, VSI elected to work with another investment bank and notified CIBC World Markets on June 10, 1999, of the decision and the proposed timetable for the IPO. Sometime at the beginning of July 1999, a representative of CIBC World Markets contacted VSI to communicate that Datascope was interested in acquiring VSI. On July 21, 1999, Datascope filed suit against VSI. On July 30, 1999, VSI filed a registration statement with the Securities and Exchange Commission ("SEC") for its IPO of VSI common stock. Pursuant to SEC requirements, VSI disclosed Datascope's lawsuit against it.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik,* 47 F.3d at 957.

### B. Issues

In defense against VSI's counterclaims, Datascope asserts that its original lawsuit was a valid exercise of its First Amendment right to petition and therefore, under

the *Noerr–Pennington* doctrine, should be immune from tort liability. To the contrary, VSI contends that Datascope's patent suit was "objectively baseless" and subjectively motivated to harm VSI, thus rendering Datascope ineligible for *Noerr–Pennington* immunity. Moreover, VSI argues that the doctrine is entirely inapplicable to the facts of the instant case. The Court disagrees, and it finds summary judgment for the original Plaintiff to be appropriate for the reasons stated below.

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Supreme Court established that the First Amendment right to petition includes a litigant's right to bring suit in state or federal court. Under the *Noerr–Pennington* doctrine, the act of filing a lawsuit is immune from antitrust or tort liability unless it is found to be a mere sham intended to disguise tortious or anti-competitive liability. *Noerr,* 365 U.S. at 140, 81 S.Ct. 523. In the Eighth Circuit, this exception has been further defined as follows:

> It is only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process, that the *Noerr–Pennington* cloak of immunity provides no protection.... Thus the filing of suit will fit within the "sham exception," and will give rise to tort liability, only if "clearly baseless," or if accompanied by perjury, fraud, conspiracy, bribery, misrepresentation, or other "illegal and reprehensible practices."

*Surgidev Corp. v. Eye Tech., Inc.,* 625 F.Supp. 800, 803 (D.Minn.1986) (following

*Razorback Ready Mix Concrete Co., Inc. v. Weaver,* 761 F.2d 484 (8th Cir.1985)) (citations omitted). *See also Lund Industries, Inc. v. Westin, Inc.,* 764 F.Supp. 1342, 1345 (D.Minn.1990) (following same authority). If a court finds a lawsuit to be objectively baseless or without probable cause, then the court may look to the subjective motivation of the party bringing suit to determine whether liability should attach. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 59, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

While the *Noerr–Pennington* doctrine certainly arose in the context of the Sherman Act and antitrust litigation, the doctrine has been appropriately adopted by courts to apply in other contexts as well. *See Professional Real Estate Investors, Inc.,* 508 U.S. at 59, 113 S.Ct. 1920 ("Whether applying *Noerr* as an antitrust doctrine or invoking it in other contexts, we have repeatedly affirmed that evidence of anti-competitive intent or purpose alone cannot transform otherwise legitimate activity into a sham."). Indeed, this District has previously found the doctrine to apply in contexts similar to that in the instant case. *See, e.g., Lund Industries, Inc. v. Westin, Inc.,* 764 F.Supp. 1342 (D.Minn. 1990) (patent); *Surgidev Corp. v. Eye Technology, Inc.,* 625 F.Supp. 800 (D.Minn.1986) (unfair competition and breach of non-disclosure agreement). Accordingly, the Court finds the doctrine to be applicable in the instant case as well.

The Court finds that the original suit brought by Datascope was an objectively based attempt to assert and protect its patent rights. While the Court ultimately found for VSI on the issue of past and present infringement, it was not unreasonable for Datascope to challenge conduct that it perceived to be "commercial," and thus outside the clinical trial exemption.

If it were deemed unreasonable for a patentee to challenge allegedly infringing conduct, then potential infringers could manipulate the clinical trial safe haven as a shield from otherwise illegal activity. While that did not prove to be the case here, such a scenario is plausible and justifies patent enforcement actions such as that brought by Datascope. With respect to future infringement, the Court's decision to not exercise jurisdiction for purposes of issuing declaratory judgment did not address the merits of Datascope's claim. The Court declines and does not need to address the merits of the patent claim to determine this motion. As the Court stated in its previous order, "[a] patentee may seek a declaration that a party will infringe a patent in the future." *See Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1571 (Fed.Cir.1997); *Lang v. Pacific Marine & Supply Co., Ltd.*, 895 F.2d 761, 763 (Fed.Cir.1990). Given that such relief is available to a patentee and given the superficial similarity between the Duett ™ and the methodology described in patent '498, it is not clear to the Court that such a claim is objectively baseless. Thus, the Court finds Datascope's claims to have been objectively based.

■ Because the Court finds the underlying lawsuit to have been objectively based, under *Professional Real Estate*, the Court need not consider Datascope's subjective motivation in bringing the suit. VSI argues to the contrary, maintaining that the patent context and the timing of Datascope's suit require the Court's consideration of the issue. Even if the Court were to take into account evidence of Datascope's subjective intent, however, the result would be the same. To the extent that it can be proven that an original plaintiff had actual knowledge that the patent-in-suit was invalid, then a court will consider evidence of bad faith as proof of sham litigation. *See Lund Industries, Inc. v. Westin, Inc.*, 764 F.Supp. 1342, 1346 (D.Minn.1990). VSI's claims, however, do not allege such bad faith, nor has any evidence been presented to that end. Moreover, though the timing of Datascope's lawsuit is certainly notable, VSI has presented insufficient other evidence to clearly establish bad faith and to overshadow the objective base of Datascope's infringement claims.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff Datascope's Motion for Summary Judgment (Doc. No. 32) is **GRANTED;** and

2. Defendant VSI's counterclaims (Doc. Nos. 8 & 9) are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**